IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 25, 2022

## STATE OF TENNESSEE v. GUY A. COBB

**Appeal from the Criminal Court for McMinn County**
No. 19-CR-84      Sandra Donaghy, Judge

_____

### No. E2021-00903-CCA-R3-CD

_____

The Defendant, Guy A. Cobb, was convicted of one count of possession with intent to sell more than one-half gram of methamphetamine, a Class B felony, and was sentenced to eight years' probation. *See* T.C.A. § 39-17-434 (2018). Subsequently, the trial court found the Defendant violated conditions of his probation and ordered him to serve the balance of his sentence in confinement. On appeal, the Defendant contends that the trial court erred by ordering him to serve his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Joseph Liddell Kirk, Madisonville, Tennessee (on appeal); and Judith Alice Hamilton, Athens, Tennessee (at probation revocation hearing), for the appellant, Guy A. Cobb.

Herbert H. Slatery III, Attorney General and Reporter; Lindsay Kay Haynes Sisco, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 19, 2020, the Defendant pleaded guilty to possession with intent to sell more than one-half gram of methamphetamine and was sentenced to eight years' supervised probation. The Defendant's first violation of probation warrant was issued on May 11, 2020, alleging that the Defendant had violated the terms of his probation by failing to report to his probation officer as instructed, by failing to complete an alcohol and drug assessment, and by failing to provide a biological specimen to be collected and forwarded to the Tennessee Bureau of Investigation. An amended warrant was issued on June 29,

2020, alleging that the Defendant violated the terms of his probation by being arrested, by failing to report his arrest to his probation officer, by failing to report his new residence to his probation officer, by failing to agree to a search by law enforcement officers, and by having an unpaid balance in criminal court. Following a hearing on September 11, 2020, the Defendant's probation was revoked, and he was ordered to serve five months' incarceration. The Defendant's probation was reinstated, and his sentence was extended by one year.

A second violation of probation warrant was issued on March 26, 2021, alleging that the Defendant violated the terms of his probation by failing to obey all laws and ordinances, by failing to work at a lawful occupation, by failing to inform his probation officer before changing his residence or occupation, by failing to report to his probation officer within 72 hours of release from jail, by failing to report to his probation officer as instructed, by failing to agree to a search, and by using intoxicants. The warrant also alleged that the Defendant did not sign his September 11, 2020 probation order as required and was uncooperative with his probation officer.

At the July 12, 2021 revocation hearing, the Defendant pleaded guilty to violating the terms of his probation by being cited for possession of drug paraphernalia, by failing to report living in a new county, and by testing positive for methamphetamine and amphetamines. The hearing testimony focused on the appropriate consequences for the Defendant's admitted violations.

Tennessee Department of Correction (TDOC) probation and parole officer Stephanie Tupper testified that she met with the Defendant at court after a September 11, 2020 revocation hearing. Ms. Tupper said that she read the probation rules "word for word" to the Defendant. Ms. Tupper said that the Defendant was not cooperative and that he "constantly" interrupted her and spoke with "obscenities." Ms. Tupper said that the Defendant did not sign the rules of probation. She explained that the Defendant should have signed the rules of probation at the time he pleaded guilty and was placed on probation, but he had not. Ms. Tupper said that she had problems getting the Defendant to come into the office for his intake and that his being in court was the first time she had met him to complete the intake.

Ms. Tupper testified that during the intake following his violation hearing, she instructed the Defendant that he needed to report to the TDOC probation office in Madisonville. She said that she would not recommend returning the Defendant to probation or an alternative sentence because the Defendant had been uncooperative during his probation despite "the massive efforts" probation officers had made to get him to comply with the rules of probation.

On cross-examination, Ms. Tupper testified that on one occasion, the Defendant reported to the probation office but that he was exhibiting symptoms of COVID-19. The Defendant was told he needed to leave the office and to take a COVID-19 test. Ms. Tupper explained that the Defendant was to report back to the office the following week if the results were negative, but he did not report. Ms. Tupper said that on another occasion, the Defendant arrived at the probation office exhibiting symptoms of COVID-19. She explained that the Defendant was told to leave, to take a test, and to return in a few days if the test was negative. She said that if the Defendant's test was positive, verification of the test result was needed. Ms. Tupper said that the Defendant never provided proof of a COVID-19 test and that he failed to report or complete the intake process. Ms. Tupper said that after the Defendant was released from custody following his first violation, he was instructed to call the Madisonville probation office but that he reported to the Chattanooga probation office. Ms. Tupper said that she did not know why the Defendant went to the Chattanooga probation office because he had been instructed to report in Madisonville. Ms. Tupper said that C.J. Solene was the Defendant's probation officer and that the Defendant had not completed intake in Madisonville because the officer had no records of the Defendant's fingerprints, identification photograph, or DNA.

TDOC officer Angela Carr testified that she began supervising the Defendant on March 16, 2020. Ms. Carr said that the Defendant reported to her office in Chattanooga on November 5, 2020, to complete his intake after being released from custody. She said that the Defendant gave a Chattanooga address but that she was unable to do a home visit. Ms. Carr explained that on November 25, 2020, the Defendant was supposed to complete an alcohol and drug assessment by telephone but that he missed the call. Ms. Carr said that she received a faxed notification that the Defendant had voluntarily checked himself into a mental health facility associated with the Department of Veterans Affairs and that he was there from November 24 to December 1, 2020. Ms. Carr explained that though she called and sent several text messages to the Defendant, she had no contact with the Defendant after December 1. Ms. Carr said she was contacted by a "Dangerous Drug Task Force" officer and received a report that the Defendant was no longer in Chattanooga.

Ms. Carr testified that in January 2021, she attempted to visit the Defendant in Etowah, Tennessee. She said other officers attempted to visit the Defendant at a Red Roof Inn in Etowah. Ms. Carr said that she had no contact with the Defendant and that after his release the Defendant did not do as instructed, made occasional telephone calls, did not complete his alcohol and drug assessment, and moved from Chattanooga to Etowah. Ms. Carr said that the Defendant left without permission and failed to disclose his address.

On cross-examination, Ms. Carr identified a December 1, 2020 probation office sign-in sheet, which indicated the Defendant had signed his name. Ms. Carr explained that she was not in the probation office on December 1. She said that she was never informed

the Defendant was at the office that day and that she never received a form indicating the Defendant saw another officer on December 1.

The Defendant testified that after he was released from confinement, he went to report to the probation office in Madisonville. He said that when he arrived, he filled out paperwork. The Defendant explained that he had a fever and that Ms. Tupper told him to leave and take a COVID-19 test. The Defendant said that he called the probation office to inform them that he was told to quarantine for three weeks while he waited on his test result. The Defendant said that during this time, "C.J.," the probation officer assigned to him, visited the Defendant three times at the Econo Lodge in Athens, Tennessee. The Defendant said that C.J. never asked him to return to the probation office to complete paperwork and that the Defendant believed he had completed the necessary paperwork. The Defendant said that he moved from a Warren Street address to the Econo Lodge because he lived on Warren Street with his sister, and she was on dialysis and had lung problems. The Defendant said that after his COVID-19 exposure, he could no longer live with his sister, and he moved to the Econo Lodge. The Defendant said that he reported his move to C.J.

The Defendant testified that after he was released from jail for his first violation of probation on September 11, 2020, he called the Madisonville probation office and told them that his new residence was with his sister in Chattanooga. The Defendant said that he completed intake paperwork in Chattanooga and took a drug test, which he failed. The Defendant said that he was sanctioned and told to complete an alcohol and drug assessment. The Defendant said the alcohol and drug assessment was scheduled for November 25, 2020, at a Chattanooga clinic. The Defendant explained that he was diabetic and that the day before the assessment, he was hospitalized at Park Ridge Hospital, where he spent two days. He said that after two days, he was taken by ambulance to the VA hospital in Murfreesboro, where he stayed until December 1, 2020. The Defendant said that he was in the VA hospital for diabetes-related problems, not for mental health problems. The Defendant explained that it was not his decision to leave Chattanooga to go to the VA hospital.

The Defendant testified that after he was released from the VA hospital, he went directly to the probation office. The Defendant said that he spoke with the receptionist and asked to see Ms. Carr but was told that Ms. Carr was not in the office. The Defendant said that he called and spoke with Ms. Carr, who told him that she would not be in the probation office that day and that she would call the Defendant. The Defendant said that he had a drug problem, that he wanted to go to a drug rehabilitation facility in Nashville the next day, and that Ms. Carr gave him permission to go to the Nashville hospital. The Defendant explained that he went to the Nashville rehabilitation facility, Matthew 25, and that he stayed there for several weeks until he received news that his mother had died.

-4-

The Defendant testified that his telephone had been taken from him at Matthew 25 and that he failed to call his probation officer when he left the rehabilitation facility. The Defendant said that news of his mother's death was a shock. He said that his focus was on getting to McMinn County, where his mother lived at the time of her death. The Defendant said he stayed at the Days Inn in McMinn County and then the Super 8 hotel, which was located near the Days Inn. The Defendant said that both hotels were in McMinn County, where he was arrested on the violation of probation warrant.

The Defendant testified that he pleaded guilty to the charge of violation of probation by possessing drug paraphernalia. He said that he had a drug addiction, had used drugs "on and off" his entire life, and needed long-term inpatient treatment. The Defendant said that he had completed some college, had worked at a pharmaceutical company, and had held several fulltime jobs. The Defendant said that he was in the Army from 1987 to 1993, when he was honorably discharged for medical reasons. He said that he had PTSD. The Defendant said that he completed an alcohol and drug assessment on June 29, 2021, and that the recommendation was that the Defendant be referred to residential recovery services, mental health counseling, and medication consultation. The Defendant said that in 2008, he completed a drug treatment program and then went back to school. He said that he had medical complications related to PTSD and was unable to complete his education. The Defendant said that his PTSD was a result of his being assaulted during Army basic training. The Defendant explained that his not being able to complete school was disappointing and that he began using drugs again.

The Defendant testified that he wanted to serve his time in a long-term inpatient residential treatment program through the Veterans Court docket. The Defendant said that he would be compliant with the terms of his probation and that his service-related disability would pay for the treatment expenses. The Defendant said that this was his first felony conviction.

The Defendant testified that he never lived at the Red Roof Inn in Etowah. The Defendant said that he had a nephew who was approximately six or seven years younger than him and who looked like the Defendant. The Defendant said that if the Etowah police had information that the Defendant was selling drugs while staying at the Red Roof Inn, it was likely the Defendant's nephew who was actually selling drugs and staying at the Red Roof Inn.

On cross-examination, the Defendant agreed that on September 11, 2020, he did not sign the probation form after the charges for his first violation were dismissed. The Defendant said that he did not sign the form because Ms. Tupper did not fully explain the form. The Defendant said that Ms. Tupper was reading the form quickly and that she refused to repeat herself when he asked. The Defendant said that he and Ms. Tupper did not like each other and that they argued. The Defendant said that he told her that he would

not sign the form until he understood its contents and that she took the form and left. The Defendant said he later signed the form when he went to complete his intake in Chattanooga. The Defendant agreed that he did not report his staying at the Days Inn or the Super 8 in McMinn County for his mother's memorial service. The Defendant explained that the Days Inn and the Super 8 were jointly owned and connected. He said that they used the same check-in desk for both hotels and that he switched rooms because he had a Super 8 coupon.

At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve the balance of his eight-year sentence. This appeal followed.

The Defendant contends that the trial court abused its discretion when it revoked his probation and ordered him to serve the balance of his sentence in confinement. The Defendant argues that although he admitted to violating the terms of his probation, he was "dealing with family loss, personal illness, and the chaos and confusion of the worldwide pandemic." He argues that the errors he made during "difficult times" did not merit confinement for the balance of his sentence and that he should have received a period of split confinement and a referral to a residential drug rehabilitation program. The State responds that the court did not err by ordering the Defendant to serve the balance of his sentence in confinement because the Defendant admitted to the violations and substantial evidence supported the revocation of probation.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)); *see Dagnan*, 641 S.W.3d at 758 ("'A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.'") (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759.

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id.* at 757. A separate hearing

is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id.* §§ 40-35-308(a), (c) (Supp. 2021), -310 (Supp. 2021). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 215 Tenn. 553, 387 S.W.2d 811, 814 (Tenn. 1965)).

During the hearing, the trial court first acknowledged that a criminal liaison had completed an alcohol and drug assessment and a mental health assessment on the Defendant and referred the Defendant to the Veterans Court for residential recovery, mental health, and medication consultation. The court found that the referral seemed reasonable "at first blush."

The court addressed Ms. Tupper's testimony and found that Ms. Tupper had been instructed to go to the jail and have the Defendant sign the probation form. The court took judicial notice of the probation form, which contained a blank space where the Defendant's signature should have been. The court credited Ms. Tupper's testimony that she read the Defendant the rules; that the Defendant was angry, disruptive, and uncooperative; and that the Defendant failed to sign the rules. The court found that Ms. Tupper instructed the Defendant to report to the Madisonville probation officer within seventy-two hours of his release from jail and that the Defendant failed to report. The court also credited Ms. Tupper's testimony that the Defendant reported in person for intake, that the Defendant had COVID-19 symptoms, that Ms. Tupper instructed the Defendant to get a test and report back the next week with proof of his test, and that the Defendant never reported to the Madisonville probation officer. The court credited Ms. Tupper's testimony that C.J. Solene was the Defendant's probation officer and that the Defendant had not completed intake in Madisonville because the officer had no records of the Defendant's fingerprints, identification photograph, or DNA. Moreover, the Defendant had not completed the probation form or an alcohol and drug assessment.

The court credited Ms. Carr's testimony and found that she had been assigned to the Defendant's case. The court found that Ms. Carr's telephone records indicated that she had contact with the Defendant. The court found that Ms. Carr was unable to do a home visit with the Defendant because on the scheduled day, November 25, 2020, the Defendant failed to report for unknown reasons. The court said that the Defendant did not present himself on November 25 because he had high blood sugar and was transported to the VA hospital. The court found that normal protocols were not followed because of the

Defendant's refusal to cooperate and the Defendant's health issues. The court credited Ms. Carr's testimony that she had concerns about the Defendant's ability to comply with the rules of probation because the Defendant's telephone contact was sporadic and the Defendant's leaving Chattanooga for Etowah without permission. The court acknowledged that Ms. Carr identified a probation office sign-in form and concluded either that the other probation officers failed to follow protocol or that the Defendant signed in at the probation office, spoke on the telephone with Ms. Carr, and then left the office.

The trial court found that the Defendant was not present at the Red Roof Inn because there was no testimony from witnesses who saw the Defendant there. The court credited the Defendant's testimony that the Defendant and Ms. Tupper did not like each other and argued. The court acknowledged that Ms. Tupper attempted to bring the Defendant into compliance.

The trial court credited the Defendant's testimony that reporting was done by telephone instead of in-person because of COVID-19. The court said that it was simple to report by telephone and expressed concern that two different probation officers said the Defendant failed to report as directed. The court credited the Defendant's testimony that he went directly from the hospital to the rehabilitation facility. The court found that the probation officers clearly explained to the Defendant what was expected of him. The court found that the Defendant cursed at Ms. Tupper; that his contact with the probation officers was by text message or telephone; and that the Defendant moved from one hotel to another, explaining that it was all the same complex. The court found that the Defendant was required under the rules of his supervision to report any address change. The trial court found that the Defendant was respectful, articulate, educated, and "somewhat manipulative."

The trial court addressed the allegations in the warrant. The first violation was based on the Defendant's violating Rule 14 by refusing to sign the probation form, and the court found that the State proved that the Defendant violated Rule 14 on March 26, 2021. The court found that the Defendant failed a drug screen and violated Rule 8. The court reasoned that based on these violations, the Defendant was not amenable to supervision. The court ordered the Defendant to serve the balance of his sentence in confinement. The court said that "good treatment" was available in the TDOC. The court instructed the Defendant that he should ask for substance abuse treatment. The court told the Defendant that it would give a "strong recommendation" that the Defendant receive substance abuse treatment.

On appeal, the Defendant argues that despite his admitting to violating the terms of his probation, the trial court erred by revoking his probation and ordering him to serve the balance of his sentence. The record reflects, however, that the Defendant admitted to violating the terms of his probation by being cited for possession of drug paraphernalia, by failing to report his living in a new county, and by testing positive for methamphetamine

-8-

and amphetamines. The record supports the court's finding that the Defendant violated the terms of his probation by failing to cooperate with Ms. Tupper and sign his probation form. The court placed on the record sufficient findings, its reasons for revoking probation, and the consequences for the revocation. The court did not abuse its discretion by ordering the Defendant to serve the balance of his sentence in the TDOC. *See Dagnan*, 641 S.W.3d at 759. The Defendant is not entitled to relief.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE